779 P.2d 956 (1989)
BALLY'S GRAND EMPLOYEES' FEDERAL CREDIT UNION and Judy McDaniel, Appellants and Cross-Respondents,
v.
Delorse WALLEN, Respondent and Cross-Appellant.
No. 18795.
Supreme Court of Nevada.
September 21, 1989.
Stephens, Knight and Edwards, Reno, Callister & Reynolds, Las Vegas, for appellants and cross-respondents.
*957 Glade L. Hall, Reno, for respondent and cross-appellant.

OPINION
PER CURIAM:
After being terminated by appellant/cross-respondent Bally's Grand Employees' Federal Credit Union (Bally), respondent/cross-appellant Delorse Wallen (Wallen) brought suit against Bally and her supervisor, appellant/cross-respondent Judy McDaniel (McDaniel). Wallen alleged: (1) breach of contract against Bally; (2) breach of the implied covenant of good faith and fair dealing against Bally; (3) defamation against McDaniel; (4) slander against McDaniel and Bally's general manager, Peter Todd; and (5) wrongful interference with contract against McDaniel and Todd.
During trial, Todd was dismissed as a defendant upon the parties' stipulation. At the close of Wallen's case-in-chief, the district court dismissed the defamation and slander claims against McDaniel pursuant to McDaniel's NRCP 41(b) motion. The jury, by a vote of six to two, returned a general verdict in favor of Wallen and assessed compensatory damages of $21,000 and punitive damages of $25,000. After entry of judgment, Bally and McDaniel moved for judgment notwithstanding the verdict or, in the alternative, remittitur of punitive damages. The district court denied the JNOV motion, but reduced the punitive damages award to $15,000 and apportioned it at $10,000 against Bally's and $5,000 against McDaniel.
Bally and McDaniel appeal separately from the judgment as amended and allege numerous assignments of error. Wallen cross-appeals from the dismissal of her defamation claim and from the district court's partial remittitur of punitive damages.
Preliminarily, we note that in order for the jury to have decided in Wallen's favor on her employment claims it first was required to find that she was other than an at-will employee, i.e., it was required to find that Bally employed Wallen under either an express or an implied contract that she would be terminated only for just cause. See Sands Regent v. Valgardson, 105 Nev. ___, ___, 777 P.2d 898, 899 (1989) (breach of contract and bad faith discharge presuppose more than at-will employment agreement between parties). Absent such a finding, and with certain limited exceptions not relevant here, Bally was at liberty to discharge Wallen with or without cause. See Smith v. Cladianos, 104 Nev. ___, ___, 752 P.2d 233, 235 (1988).
Bally contends that nothing other than an "at-will" employment relation existed between it and Wallen and that the evidence does not support the jury's verdict. In considering Bally's contention, we must assume that the jury believed the evidence favorable to Wallen and made all reasonable inferences in her favor. Paullin v. Sutton, 102 Nev. 421, 423, 724 P.2d 749, 750 (1986). We will not overturn the jury's verdict if it is supported by substantial evidence, unless, from all the evidence presented, the verdict was clearly wrong.[1]Id.; Hotels El Rancho v. Pray, 64 Nev. 591, 626, 187 P.2d 568, 585 (1947).
From our review of the record we are convinced that the evidence upon which the jury could have found the existence of an implied-in-fact contract to terminate only for just cause was not substantial. Regarding the purported terms of her employment with Bally, Wallen testified: "Well, I understood as far as a contract between Judy [McDaniel] and I that I  as long as I performed my duties, I would have a job." (Emphasis supplied). We recently indicated, however, that an employee's subjective expectations are legally insufficient to transform an at-will employment relationship into a contract of termination only for just cause. Vancheri v. GNLV Corp., 105 Nev. ___, ___, 777 P.2d 366, 369 (1989) (citing Roberts v. Atlantic *958 Richfield Co., 88 Wash.2d 887, 568 P.2d 764, 769 (1977); Schwartz v. Michigan Sugar Co., 106 Mich. App. 471, 308 N.W.2d 459, 462 (1981)). Thus, this testimony was insufficient as a matter of law to establish an intention on the part of Bally to create anything other than an at-will employment contract.
Wallen also testified that during a preemployment polygraph examination she indicated that she was seeking permanent employment, that she believed she would be promoted to assistant manager and that she entered into all long-term employee benefit programs. This evidence, which is of dubious relevance regarding the existence of an implied-in-fact contract, established nothing more than Wallen's subjective expectations of continued employment, and, as indicated above, is legally insufficient to rebut the presumption of at-will employment. Id. at ___, 777 P.2d at 369.
Wallen points to her husband's testimony as further evidence of an implied-in-fact contract between her and Bally, but Mr. Wallen's testimony actually supports Bally's position. Regarding his knowledge of the terms of Wallen's employment, Mr. Wallen testified:
Not that this is going to go on for the rest of your lives, but the two of them working together [Wallen and McDaniel] would have a place to work together... . [T]he two of us working together, and everything is going to be rosy, we'll be here for as long as we're around, I guess for as long as you care to work.

(Emphasis supplied). This testimony described nothing more than agreement of employment for an indefinite term, and, contrary to Wallen's position, such an agreement is characteristic of an at-will relationship. See Southwest Gas Corp. v. Ahmad, 99 Nev. 594, 596, 668 P.2d 261, 262 (1983) (Steffen, J., dissenting) ("[E]mployment for an indefinite term may be terminated at any time for any reason or for no reason by either the employee or the employer without legal liability.") (citing Phillips v. Goodyear Tire & Rubber Co., 651 F.2d 1051 (5th Cir.1981)).
Wallen also argues that McDaniel's deposition testimony supports the jury's finding of an implied-in-fact contract to terminate only for just cause. We disagree.
Only through a strained interpretation of the word "substantial" could McDaniel's deposition testimony be considered sufficient to support the jury's verdict. The deposition testimony, which Wallen published at trial in an effort to impeach McDaniel, was not only contrary to McDaniel's trial testimony, it was also internally self-contradictory.[2]
The record is devoid of any other evidence from which the jury could reasonably have inferred the existence of something other than an at-will relationship between Wallen and Bally. Accordingly, we conclude that the jury's verdict cannot stand and that the judgment against Bally and McDaniel must be reversed.
In her cross-appeal, Wallen contends that the district court erred in dismissing her defamation claim. After a careful review of the record, we conclude that this contention is without merit. See Branda v. Sanford, 97 Nev. 643, 637 P.2d 1223 (1981). Moreover, our conclusions above obviate the necessity of considering Wallen's assignment of error regarding the district court's remittitur of punitive damages.
For the foregoing reasons, the judgment against both Bally and McDaniel is reversed; *959 Wallen's cross-appeal is dismissed. It is so ordered.
YOUNG, C.J., STEFFEN, SPRINGER and ROSE, JJ., and RECANZONE,[3] District Judge, concur.
NOTES
[1] Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." State Emp. Security v. Hilton Hotels, 102 Nev. 606, 608, 729 P.2d 497, 498 (1986) (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)) (emphasis supplied).
[2] After McDaniel testified that Bally's had no policy of termination for just cause, the following exchange occurred:

Q [Mr. Hall]: Is it correct that I asked you this question, "So is it the policy of the credit union that employees can only be terminated for just cause, in other words, some failure to perform?
And you gave the answer, "Correct."
A [McDaniel]: Can I answer that with an explanation, too?
Q: Sure. Just answer me, did you give that testimony at that time?
A: Yes.
Q: All right. Now, if you have an explanation, sure.
A: At that time I didn't understand fully what that meant. Later on in the deposition I corrected it, because it means like a company policy, or a signed contract, or employees manuals, and, no, we have none of that.
[3] The Honorable Mario G. Recanzone, Judge of the Third Judicial District Court, was designated by the Governor to sit in place of the Honorable John C. Mowbray, Justice. Nev. Const. art. VI, § 4.